**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

JOHNNY L. N.,                                      )
                                                   )
      Plaintiff,                           )
                                                   )
      v.                                   )      Case No. 18-CV-578-JED-FHM
                                                   )
ANDREW M. SAUL,[1] Commissioner                    )
of the Social Security Administration,             )
                                                   )
      Defendant.                           )

**OPINION AND ORDER**

This Social Security case comes before the Court on the Report and Recommendation

(R&R) (Doc. 17) of United States Magistrate Judge Frank H. McCarthy, who reviewed the

Commissioner's decision to deny Plaintiff's application for Title II benefits. Judge McCarthy

recommends the Court affirm the Commissioner's decision.

**I.      STANDARD OF REVIEW**

In reviewing a magistrate judge's recommendation, "[t]he district judge must determine de

novo any part of the magistrate judge's disposition that has been properly objected to. The district

judge may accept, reject, or modify the recommended disposition; receive further evidence; or

return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). The Court

must determine "whether the factual findings are supported by substantial evidence" and "whether

the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).

Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant

---

1. Effective June 17, 2019, Andrew M. Saul became the Commissioner of the Social Security
Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul is
substituted as the defendant in this action.

evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## II.   BACKGROUND AND ALJ DECISION

Plaintiff was 51-years old as of the alleged onset of his disability, August 4, 2015. (R. 65). At his hearing before the ALJ, he alleged disability due to depression, bipolar disorder, anxiety, paranoid schizophrenia, and colitis. (R. 36–37). After reviewing the record, the ALJ found Plaintiff to have the following severe, medically determinable impairments: Schizoaffective disorder, depression, and anxiety; and the following non-severe impairments: colitis, nonalcoholic fatty liver disease, diabetes mellitus, hypothyroidism, and obesity. (R. 14).

The ALJ determined that, despite these impairments, Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the following non-exertional limitations: "The claimant is able to perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but he is not able to relate to the general public." (R. 18). The ALJ based that finding on the opinions of two state agency psychologists who evaluated Plaintiff's application for benefits at the initial and reconsideration stages of the adjudication process. (R. 22).

The ALJ found that these limitations rendered Plaintiff unable to perform past relevant work, but that Plaintiff could successfully adjust to other work available in the national economy. (R. 23, 24). Based on the testimony of a vocational expert, the ALJ found that Plaintiff could perform the duties of a "hand packager," a "laundry worker," and a "warehouse worker," as those jobs are defined in the Dictionary of Occupational Titles (DOT). (*Id.*). Because hundreds of thousands of jobs were available in each of these occupations, the ALJ found that jobs suitable for Plaintiff were available in significant numbers. Accordingly, the ALJ found that plaintiff was not disabled for the purposes of the Social Security Act. (*Id.* at 25).

### III.   DISCUSSION

Plaintiff argues that neither the exertional nor non-exertional portions of the ALJ's RFC findings are supported by substantial evidence. He also takes issue with the ALJ's determination that Plaintiff's alleged symptoms were not entirely consistent with the evidence in the record.

#### A.   Non-Exertional RFC

Plaintiff's attack on the mental portion of the ALJ's RFC determination, though somewhat scattershot, can be divided along two main lines. First, he contends that the ALJ failed to properly account for the opinion of the state agency psychologist who adjudicated his application at the reconsideration stage. (*See* Doc. 13 at 3–4; Doc. 18 at 3–4). Second, he argues that the ALJ failed to properly address the diagnoses and statements of various treating physicians. (*See* Doc. 13 at 5–9; Doc. 18 at 2–3).

##### 1.   State Agency Opinions

Plaintiff claims that the mental portion of the ALJ's RFC finding was fatally flawed due to her failure to properly address all the limitations found by Dr. Lisa Swisher, the state agency psychologist who reviewed Plaintiff's alleged mental impairments at the reconsideration level. Plaintiff notes that Dr. Swisher found him to have "moderate difficulties in maintaining concentration, persistence or pace," and that the ALJ gave "great weight" to her opinion. (Doc. 13 at 4, citing R. 22, 83). Nevertheless, the ALJ found "no limitation" in this functional area. (*Id.*, citing R. 17). Plaintiff asserts that the ALJ "did not explain her variance from [Dr. Swisher's] opinion even though she is required to do so" and that this error requires remand. (Doc. 13 at 4).

The Court rejects this argument, albeit for reasons different than those cited by Judge McCarthy, who summarily dismissed the supposed error. Judge McCarthy rejected Plaintiff's argument because Dr. Swisher made the "moderate difficulties" statement in the "psychiatric

review technique" (PRT) portion of her report, not the RFC portion. (Doc. 17 at 3). As a result, the ALJ need not have addressed it, according to Judge McCarthy.[2]

Judge McCarthy was correct that the opinion cited by Plaintiff is in the PRT portion of Dr. Swisher's report, but a similar finding can be found in the mental RFC portion. (*See* R. 86, stating that Plaintiff's "ability to maintain attention and concentration for extended periods" was "moderately limited."). When an ALJ's RFC determination relies on the RFC opinion of a non-examining doctor, but the ALJ's RFC findings only reflect some of the functional limitations cited by the doctor, the ALJ is required to explain the decision to adopt some limitations but not others. *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007). Thus, because the ALJ purported to give great weight to Dr. Swisher's opinion, yet found no limitation regarding Plaintiff's ability to concentrate, the ALJ was arguably required to explain herself.

This does nothing to undermine the ALJ's decision, however, because the ALJ *did* explain why she did not include a limitation regarding Plaintiff's ability to sustain concentration. Noting that Plaintiff's treatment records "consistently showed good attention, and good concentration," the ALJ declined to include such a limitation because the objective evidence did not support it. (R. 17).

Moreover, a closer examination of Dr. Swisher's report, shows that the ALJ's RFC does not actually conflict with Dr. Swisher's ultimate opinion. Dr. Swisher input her report using the Electronic Claims Analysis Tool ("eCAT"). (*See* R. 89). The eCAT system instructs completing

---

2.  Although the PRT and mental residual functional capacity evaluation (MRFC) have similar components, they serve different purposes and are used at different steps in the adjudication process. The PRT is used to assess mental impairments at steps two (identifying severe impairments) and three (rating severity for the listings) of the five-step framework for determining disability. *See generally* 20 C.F.R. §§ 404.1520a, 416.920a. The MFRC, meanwhile, is used at steps four and five and is more fine grained. *See Chrisman v. Colvin*, 531 F. App'x 893, 897–98 (10th Cir. 2013).

psychologists to rate the claimant's limitations in various aspects of four categories of core mental function: "understanding and memory," "sustained concentration and persistence," "social interactions," and "adaptation." (R. 85–87). After each category, the system directs the completing psychologist to input a narrative explanation of her limitation findings in that category. At the end, the system leaves space for "additional findings."

In this case, Dr. Swisher wrote "yes" when asked if Plaintiff had limitations in the category of "sustained concentration and persistence." (R. 85). Within that category, she indicated that Plaintiff's capacity to carry out detailed instructions was "markedly limited" and his ability to "maintain attention and concentration for extended periods" was "moderately limited." (R. 86). However, in the space for a narrative explanation of these findings, she simply wrote "ae," indicating that her ultimate opinion on Plaintiff's functional capacity in the realm of "concentration and persistence" was reflected in the "additional explanation" section. (R. 86). There, she wrote, "Claimant can perform simple tasks with routine supervision." (R. 87). Thus, when her mental RFC report is viewed in context, any concerns Dr. Swisher had about Plaintiff's ability to sustain concentration were accounted for in her finding that Plaintiff was capable of performing simple tasks with routine supervision. Consequently, even if the ALJ disagreed with Dr. Swisher about the degree to which Plaintiff's impairments limited his ability to concentrate, they both agreed that he remained capable of performing simple tasks with routine supervision.

In sum, the ALJ adequately explained why she did not include a concentration limitation in her RFC, and, to the degree she and Dr. Swisher disagreed regarding his ability to concentrate, that disagreement was immaterial. As a result, the ALJ's handling of Dr. Swisher's opinion is no cause for remand.

###        2.        Other Medical Evidence

Plaintiff further argues that the ALJ failed to properly address "opinions from treatment providers that show he lacks the mental capacity to perform any competitive work." (Doc. 13 at 4). Plaintiff asserts that the ALJ ignored his diagnosis of bipolar disorder, (*see* R. 509), and a statement by Dr. Matthews, a treating physician, that he was "very low functioning at his best outside of the home environment," (R. 503). Plaintiff also takes issue with the ALJ's conclusion that Plaintiff's mental status had improved. (Doc. 13 at 9). None of these alleged errors are compelling when viewed against the record as a whole.

The ALJ did not "ignore" Plaintiff's bipolar diagnosis. She clearly discussed his bipolar diagnosis and treatment when summarizing the medical evidence. (R. 19). Of particular note to the ALJ was the fact that, although Plaintiff had a reaction to his medication that caused him to miss work, Plaintiff had been able to return to work despite his bipolar condition. Moreover, as Judge McCarthy points out in his R&R, the focus of a disability determination is on the functional consequences of a condition, not its mere diagnosis. (Doc. 17 at 4). In this case, Plaintiff points to no opinion regarding the functional limitation caused by his bipolar disorder, let alone an opinion that conflicts with the opinions of the state agency doctors, which the ALJ relied upon in formulating her own RFC finding.

As for Dr. Matthews's statement that Plaintiff "is very low functioning at his best" outside the home, that statement is entirely consistent with the ALJ's RFC finding. The ALJ found that Plaintiff's impairments limit him to simple tasks, superficial contact with coworkers, and no contact with the general public. Moreover, just a month after Dr. Matthews's entered that statement in his treatment notes, Plaintiff exhibited "much improved symptoms" at a follow-up appointment and reported that he wanted to start looking for a job. (R. 513, 515). Thus, even if Dr. Matthews's statement can be read as an opinion that Plaintiff was incapable of working outside the home, that

6

opinion was contradicted just a month later when, by Plaintiff's own assessment, his mental health was such that he felt capable of functioning in the workplace. The ALJ noted these improvements in concluding that, although Plaintiff's symptoms had fluctuated, "on balance, the mental health treatment records reflect more positive results and improvement." (R. 22).

This leads to Plaintiff's final complaint regarding the mental portion of the ALJ's RFC. According to Plaintiff, the ALJ impermissibly read the waxing and waning of his symptoms as evidence that he is capable of returning to work. (Doc. 13 at 9). This argument is unavailing. The ALJ accurately summarized the record, noted that Plaintiff's symptoms fluctuated over time, and explained her conclusion that Plaintiff's limitations were significant but not debilitating. In other words, the ALJ did not ignore the medical opinions and diagnosis, she just concluded that, on balance, Plaintiff's symptoms appeared to be under control with treatment and medication. The existence of conflicting evidence is not an appropriate cause for remand. As Judge McCarthy explained, Plaintiff must do more than show that there is evidence in the record that could arguably support a favorable conclusion. (Doc. 17 at 4); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

**B.      Exertional Limitations**

Plaintiff argues that the ALJ erred by not including any physical limitations related to his ulcerative colitis in her RFC finding. (Doc. 13 at 10–13). Plaintiff argues that the ALJ's finding of no physical limitations was in error because she relied on the opinions of state agency doctors who did not have the benefit of medical records developed after they completed their reports but before the ALJ rendered her decision. Plaintiff further argues that, by finding colitis to be a medically determinable impairment, albeit "non-severe," the ALJ was obliged to include limitations related

to that impairment in her RFC and in the hypothetical posed to the vocational expert. Neither argument is persuasive.

First, the ALJ did not rely solely on the opinions of state agency doctors. The ALJ reviewed all the medical records, including those created after the agency opinions were issued. Second, none of Plaintiff's treating doctors opined that Plaintiff's condition limited his ability to work. Thus, the opinions of the state-agency doctors are uncontroverted in the record.

Third, notwithstanding Plaintiff's assertion to the contrary, the mere existence of an impairment does not require the ALJ to include a corresponding limitation in the RFC and, by extension, in the hypothetical posed to the vocational expert. The rules simply require an ALJ to address the degree to which an impairment, once found to be medically determinable, causes functional limitation. In this case, the ALJ reviewed the record, noting that a treating physician recently found that Plaintiff's colitis was in remission, and concluded that Plaintiff's colitis did not significantly limit his ability to do basic work activities. (R. 16). The Court therefore concurs with Judge McCarthy that the ALJ's RFC, which omitted any limitation attributable to colitis, is supported by substantial evidence.

### C.    Consistency Analysis

Finally, Plaintiff argues that the ALJ's consistency determination was "faulty and unsupported by the substantial evidence of the record as a whole." (Doc. 13 at 13). An ALJ must evaluate a claimant's statements about the intensity, persistence, and limiting effects of alleged symptoms. The process for doing so is outlined in Social Security Ruling (SSR) 16-3P (2017), 2017 WL 5180304. In evaluating a claimant's symptoms it is not sufficient for an ALJ "to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" 2017 WL 5180304 at *10. "The determination or decision must contain specific

reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

Plaintiff argues that the ALJ failed to consider his sensitivity to medications, but he fails to explain how this would change the credibility analysis. He also argues that the ALJ failed to credit his "excellent work history," but he cites no binding authority that required the ALJ to do so. Finally, Plaintiff notes that, at the hearing, the ALJ said, "I want you to know that I totally believe everything you said[.] I just have to base my decision on the medical records." (Doc. 13 at 14, citing R. 62). The Court agrees that this was not an accurate statement of the law as it regards the manner in which an ALJ is to assess a claimant's subjective complaints, but the Court views the ALJ's comment as an errant, off-hand remark because the decision itself reflects that the ALJ evaluated the evidence as required.

The Court finds that the ALJ performed an appropriate analysis and adequately articulated the basis of her findings. As pointed out by Judge McCarthy, (Doc. 17 at 7), the ALJ noted that the Plaintiff's testimony about his gastrointestinal symptoms was not consistent with his statement to a physician that his colitis was in remission. (R. 16). The ALJ also noted the Plaintiff's fluctuating symptoms and improvement with medication. In short, the ALJ found that there was evidence in the record consistent with Plaintiff's complaints, but also evidence at odds with it. After considering this evidence, she concluded that his impairments caused the substantial limitations reflected in the RFC but no more. This was reasonable, given the record. Accordingly, remand is not required.

**IV.      CONCLUSION**

For the foregoing reasons, the Court **accepts** Judge McCarthy's R&R (Doc. 17) and the

Commissioner's decision is **affirmed.** A judgment in accord with the Court's decision will follow

this Order and Opinion forthwith.

SO ORDERED this 30th day of September, 2020.


_____

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT